GIBBS CATTLE CO., A NEBRASKA CORPORATION, APPELLEE, V.
EDNA F. BIXLER ET AL., APPELLEES, AND MARGARET BIXLER
AND EDWARD STEPHEN CASSELLS, APPELLANTS.

___ N.W.2d ___

Filed May 24, 2013.    No. S-12-687.

1. **Equity: Appeal and Error.** On appeal from an equity action, an appellate court
   tries factual questions de novo on the record and, as to questions of both fact and
   law, is obligated to reach a conclusion indepedent of the conclusion reached by
   the trial court.
2. **Mines and Minerals: Decedents' Estates: Title.** The "record owner" of mineral
   interests, as used in Neb. Rev. Stat. § 57-229 (Reissue 2010), may be determined
   not only from the register of deeds, but also from probate records in the county
   where the interests are located.
3. **Statutes: Pleadings: Parties.** Neb. Rev. Stat. § 25-201.02(2) (Reissue 2008)
   applies only to an amendment that "changes the party or the name of the party"
   and that refers to a substitution, rather than to an addition, of parties.

Appeal from the District Court for Sioux County: TRAVIS P.
O'GORMAN, Judge. Reversed.

John F. Simmons, of Simmons Olsen Law Firm, P.C., for
appellants.

Steven C. Smith and Lindsay R. Snyder, of Smith, Snyder &
Petitt, G.P., for appellee Gibbs Cattle Co.

WRIGHT, CONNOLLY, STEPHAN, MILLER-LERMAN, and CASSEL, JJ.

CONNOLLY, J.

## SUMMARY

Gibbs Cattle Co. is the surface owner of various tracts of
land in Sioux County, Nebraska. Gibbs sued the owners of
severed mineral interests in those tracts under Nebraska's dor-
mant mineral statutes[1] to reacquire their allegedly abandoned
interests. Mineral interests are deemed abandoned unless the
"record owner" has taken certain steps to publicly exercise
his or her ownership rights during the 23 years preceding the
surface owner's suit.[2] This case primarily involves two issues:

---

[1] See Neb. Rev. Stat. §§ 57-228 to 57-231 (Reissue 2010).

[2] See § 57-229.

(1) whether the "record owner" may be determined only from the register of deeds in the county where the interests are located or also from other public records, such as probate records in the county; and (2) whether an amended complaint adding, rather than changing (i.e., substituting), a new party defendant may relate back to the original complaint.

In interpreting the relevant statutes, we conclude that the "record owner" of mineral interests, as used in § 57-229, includes an individual identified by probate records in the county where the interests are located. We also conclude that Neb. Rev. Stat. § 25-201.02(2) (Reissue 2008) applies only to an amendment that "changes the party or the name of the party" and that refers to a substitution, rather than to an addition, of parties. We reverse the district court's contrary rulings.

## BACKGROUND

Although there are numerous defendants, only two are involved in this appeal: appellant Margaret Bixler and appellant Edward Stephen Cassells. The facts are undisputed and set forth below.

### MARGARET

Gibbs filed its initial complaint on December 21, 2010. Thereafter, Gibbs discovered that the register of deeds listed John H. Bixler as an owner of mineral interests in some of Gibbs' land. So on March 18, 2011, Gibbs amended its complaint to add John as a defendant. But John had died in 1996, and Margaret, as John's widow and personal representative of his estate, had completed the probate process. Margaret filed an answer, as John's personal representative, requesting the court to order that all title to John's mineral interests remain in John. Margaret then filed an amended answer stating that through John's will she had a life estate in the mineral interests, and she requested the court to order all title to the mineral interests remain in her. The probate records confirmed Margaret's factual assertions, though none of the records (such as the inventory sheets, deed of distribution, or inheritance tax determinations) specifically mentioned the mineral interests.

Both Gibbs and Margaret moved for summary judgment. Gibbs argued that John, the record owner, had not publicly exercised his ownership rights in the mineral interests in the 23 years prior to Gibbs' complaint. As such, Gibbs argued that John had abandoned those rights and that the mineral interests should vest with Gibbs, the surface owner. Margaret argued that John's conveyance of the mineral interests to her through his will was a public exercise of ownership. Margaret also argued that based on the probate records, she was the "record owner" of the mineral interests, and that her 23 years had not yet elapsed.

The court found for Gibbs. The court reasoned that John was the record owner of the mineral interests because he was the person listed in the register of deeds. And the court determined that although John's mineral interests transferred through his will,[3] this was not a public exercise of ownership because that occurred by operation of law rather than by John's action. Margaret does not challenge this latter determination on appeal.

Furthermore, the court concluded that Margaret was not a "record owner" of the mineral interests and so it was immaterial whether she had exhausted the 23-year statutory period. The court noted that the dormant mineral statutes did not define the term "record owner," but that it was defined in Neb. Rev. Stat. § 19-4017.01 (Reissue 2012) as being "'the fee owner of real property as shown in the records of the register of deeds office in the county in which the business area is located.'" The court concluded that to satisfy the dormant mineral statutes' purpose, "record owner" could only mean the person listed in the register of deeds in the county where the property was located. The court vested title to the disputed mineral interests in Gibbs.

## Edward

Gibbs' initial complaint also named Virginia Audrey Cassells as one of the defendants. On January 8, 2011, Gibbs received a letter from Edward, Virginia's son, which impliedly

---

[3] See, Neb. Rev. Stat. § 30-2401 (Reissue 2008); *Wheelock v. Heath*, 201 Neb. 835, 272 Neb. 768 (1978).

asserted that he and Virginia both owned the disputed mineral interests. On January 14, Edward filed a verified claim of interest with the Sioux County register of deeds. And on February 22, Edward moved to intervene, which the court allowed. On March 18, Gibbs amended its complaint to add Edward as a defendant. In his answer, Edward claimed that he owned a portion of the disputed mineral interests and requested the court to order all title to his mineral interests remain in him.

Following Gibbs' motion for summary judgment, Edward likewise moved for summary judgment. There was no dispute that Edward and Virginia were the record owners of the mineral interests. Rather, the sole issue before the court was whether Gibbs' amended complaint adding Edward as a defendant related back to the original complaint. This was because Edward had filed a verified claim of interest with the Sioux County register of deeds in January 2011, after Gibbs' original complaint in December 2010, but before Gibbs' amended complaint in March 2011. And § 57-229 requires a public exercise of ownership rights within 23 years of the operative complaint to preserve the record owner's mineral interests.

The record showed the reason for Gibbs' failure to include Edward in the original complaint. The deed conveying the mineral interests listed the grantors as "Virginia Audrey Cassells & Edward Cassells, her husband," and the grantees as "Virginia Audrey Cassells & Edward Stephen Cassells" as joint tenants. The title examiner, after reviewing the deed, concluded that the two Edwards were the same person. And the title examiner, "knowing that Virginia's husband, Edward Cassells" had died, concluded that Virginia was the sole owner of the mineral interests. So Gibbs named only Virginia as a defendant, rather than Virginia and Edward. This was incorrect, as the two Edwards in the deed were distinct individuals and Edward was still alive and a joint owner of the mineral interests.

The court found that under § 25-201.02(2), Gibbs' amended complaint related back to the original complaint's date of filing. That section provides, in relevant part:

> If the amendment [to a pleading] changes the party or the name of the party against whom a claim is asserted, the amendment relates back to the date of the original pleading if (a) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth . . . in the original pleading, and (b) within the period provided for commencing an action the party against whom the claim is asserted by the amended pleading (i) received notice of the action such that the party will not be prejudiced in maintaining a defense on the merits and (ii) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.[4]

The court concluded that Gibbs had met the first requirement because the amended complaint simply added Edward as the other owner for property already described in the original complaint. The court also found that Edward had proper notice of the action, based on his letter to Gibbs, and that he would not be prejudiced on the merits by having the amendment relate back. And the court concluded that Edward "knew he should have been included" because "his letter indicated his belief that [Gibbs] 'had sued us,'" meaning him and Virginia.

Edward argued that the relation-back doctrine did not apply because Gibbs did not "change[] the party or the name of the party"[5] but instead *added* an entirely new party. The court rejected that argument, and concluded that the word "change" should be liberally construed to include adding a new party. The court reasoned that modern pleading rules were more relaxed and that such a construction fell squarely within the remedial nature of the relation-back doctrine. Moreover, the court found that Gibbs' mistake in failing to name Edward as a defendant was "made despite [Gibbs'] due diligence." Finally, the court rejected Edward's argument that the relation-back doctrine could not apply because the 23-year period under § 57-229 was not a statute of limitations. So the

---

[4] § 25-201.02(2).

[5] *Id*.

court concluded that Edward's verified claim of interest was too late. The court then vested title to the disputed mineral interests in Gibbs.

## ASSIGNMENTS OF ERROR

Margaret alleges, consolidated and restated, that the court erred in (1) concluding that she was not the "record owner" of the disputed mineral interests and (2) terminating her rights to the mineral interests and vesting them in Gibbs.

Edward alleges, consolidated and restated, that the court erred in (1) allowing Gibbs' amended complaint to relate back to the filing date of the original complaint under § 25-201.02(2) and (2) terminating his rights to the mineral interests and vesting them in Gibbs.

## STANDARD OF REVIEW

[1] On appeal from an equity action, an appellate court tries factual questions de novo on the record and, as to questions of both fact and law, is obligated to reach a conclusion independent of the conclusion reached by the trial court.[6]

## ANALYSIS

### "Record Owner"

Section 57-229 sets forth various ways that the "record owner" of mineral interests may exercise his or her ownership rights and thereby avoid abandonment of his or her interests:

> A severed mineral interest shall be abandoned unless the record owner of such mineral interest has within the twenty-three years immediately prior to the filing of the action provided for in sections 57-228 to 57-231, exercised publicly the right of ownership by (1) acquiring, selling, leasing, pooling, utilizing, mortgaging, encumbering, or transferring such interest or any part thereof by an instrument which is properly recorded in the county where the land from which such interest was severed is located; or (2) drilling or mining for, removing, producing, or withdrawing minerals from under the lands or

---

[6] *Peterson v. Sanders*, 282 Neb. 711, 806 N.W.2d 566 (2011).

using the geological formations, or spaces or cavities below the surface of the lands for any purpose consistent with the rights conveyed or reserved in the deed or other instrument which creates the severed mineral interest; or (3) recording a verified claim of interest in the county where the lands from which such interest is severed are located. . . . The interest of any such owner shall be extended for a period of twenty-three years from the date of any such acts[.]

Gibbs argues that the "record owner" of mineral interests may be determined only from the register of deeds in the county where the interests are located. Margaret disagrees. She argues that the "record owner" may also be determined from other public records, and in this case, Sioux County's probate records. If Gibbs is correct, then the record owner of the mineral interests was John, who did not publicly exercise his ownership rights in the 23 years before Gibbs filed its complaint. As such, the interests would be abandoned and title to them would vest with Gibbs. But if Margaret is correct, then she became the record owner in 1996, when John died and his interests passed to her through his will. If that is the case, then Margaret could not have abandoned her interests, because 23 years had not yet passed from her acquisition of the interests.[7]

The meaning of statutory language is a question of law,[8] which we resolve independently from the lower court.[9] The district court noted that the dormant mineral statutes did not define the term "record owner." The court noted, however, that § 19-4017.01, a part of the Business Improvement District Act, defined "record owner" as "the fee owner of real property as shown in the records of the register of deeds office in the county in which the business area is located." The court applied that definition to § 57-229. But § 19-4017.01 is a separate statutory section unrelated to § 57-229, and it does not

---

[7] See § 57-229.

[8] *Ricks v. Vap*, 280 Neb. 130, 784 N.W.2d 432 (2010).

[9] *Peterson, supra* note 6.

purport to define "record owner" as used in § 57-229. Instead, § 19-4017.01 explicitly defines the term only "[a]s used in [the Business Improvement District Act]." That definition does not control here.[10]

We give statutory language its plain and ordinary meaning.[11] Black's Law Dictionary, which we have relied on in the past to define the term,[12] defines "record owner" as "[a] property owner in whose name the title appears in the public records."[13] That does not resolve the issue because it could be read to support either of the parties' positions. We must construe the term to give effect to the Legislature's intent.[14] We have reviewed the legislative history of the dormant mineral statutes, but it is scant and of little help in resolving the issue. And although a few courts from other jurisdictions have discussed the meaning of "record owner" in various contexts,[15] they are not controlling.

Gibbs argues against construing the term "record owner" to include an individual or entity identified by probate records. Specifically, Gibbs argues that other words in § 57-229 (which follow "record owner" and seemingly refer to recording instruments in the register of deeds) indicate that "record owner" means only the individual or entity listed in the register of deeds.

Gibbs' argument has some appeal, but we are unconvinced. Section 57-229 sets forth various ways that the "record owner" may publicly exercise his or her rights of ownership in certain mineral interests. One way is by taking various actions with

---

[10] See *Lozier Corp. v. Douglas Cty. Bd. of Equal.*, ante p. 705, ___ N.W.2d ___ (2013).

[11] See, e.g., *Spady v. Spady*, 284 Neb. 885, 824 N.W.2d 366 (2012).

[12] See *State v. $1,947*, 255 Neb. 290, 583 N.W.2d 611 (1998).

[13] Black's Law Dictionary 1215 (9th ed. 2009).

[14] See, e.g., *Blakely v. Lancaster County*, 284 Neb. 659, 825 N.W.2d 149 (2012).

[15] See, e.g., *Bembery v. District of Columbia*, 852 A.2d 935, 940 n.5 (D.C. 2004); *State ex rel. Forestry, Fire v. Tooele Co.*, 44 P.3d 680 (Utah 2002); *Okanogan Power & Irrigation Co. v. Quackenbush*, 107 Wash. 651, 182 P. 618 (1919).

the interests through "an instrument which is properly recorded in the county where the land from which such interest was severed is located." Another way is by "recording a verified claim of interest in the county where the lands from which such interest is severed are located." These are certainly different avenues of publicly exercising ownership, but as Margaret noted in her reply brief, that "language describes what a record owner can do to protect [his or] her interest from being deemed abandoned. [But i]t does *not* purport to tell us *who the record owner is*."[16]

The answer is not obvious. But we conclude that "record owner" should be construed to include an owner identified through the probate records of the county in which the mineral interests are located. We reach this conclusion for several reasons. Most notably, the Legislature narrowly defined the term "record owner" in § 19-4017.01 as "the fee owner of real property as shown in the records of the register of deeds office in the county in which the business area is located." While that definition does not control here, it does shed light on the issue—the intent of the Legislature may be derived from both the words that it used in a statute and those that it did not.[17] That the Legislature narrowly defined "record owner" in § 19-4017.01 indicates that it is not the ordinary meaning of the term. And because the Legislature *did not* similarly define the term in the dormant mineral statutes, it seems likely that the Legislature intended a different and broader meaning for the term in § 57-229.

Though our case law has not specifically addressed this issue, *State v. $1,947*[18] provides some support for our conclusion. In that case, the statute included the phrase "owner of record," which we equated to "record owner." Applying Black's Law Dictionary definition, we stated that "the second paragraph of [the statute] would apply only to persons whose

---

[16] Reply brief for appellant Margaret at 4 (emphasis in original).

[17] See *Lozier Corp.*, *supra* note 10.

[18] *$1,947, supra* note 12.

ownership of seized property is *a matter of public record*."[19] Margaret was identified as an owner through probate records in the county where the interests were located. Those qualify as public records, and so *$1,947* supports the conclusion that Margaret was a "record owner."

Moreover, unlike the district court, we believe that this construction is consistent with the language and purpose of the dormant mineral statutes. It is consistent with the statutes' language because the Legislature did not see fit to narrowly define the term as it had in § 19-4017.01. As to being consistent with the statutes' purpose, we acknowledge that the purpose of the dormant mineral statutes was "to address title problems that developed after mineral estates were fractured."[20] But the text of the dormant mineral statutes also demonstrates that the Legislature balanced this purpose with protecting owners' property rights.

This balancing is evident from the statutes themselves. Abandonment does not automatically occur after a set time, but only if and when a surface owner files suit; it is relatively easy for a record owner to publicly exercise his or her ownership rights; and the statutes provide for a fairly lengthy 23-year period of nonuse before a record owner's rights may be deemed abandoned.[21] Construing "record owner" to include an owner identified through probate records in the county where the interests are located is consistent with the dormant mineral statutes' purpose—it still allows for clearing title records. But that construction also protects identifiable property rights. In other words, much like the statutes themselves, this construction of "record owner" balances the desire to clear title records with protecting identifiable property rights.

Finally, we note that the parties take opposite stances on whether we should apply a liberal or strict construction to "record owner." Gibbs argues that the dormant mineral statutes

---

[19] *Id.* at 296, 583 N.W.2d at 616 (emphasis supplied).

[20] *Peterson, supra* note 6, 282 Neb. at 715, 806 N.W.2d 569.

[21] See §§ 57-228 to 57-231.

are remedial statutes and that therefore, we must construe them liberally to fulfill their intended purpose.[22] Margaret, on the other hand, notes that the dormant mineral statutes abrogate the common law against abandonment of real property and that such statutes must be strictly construed.[23] Here, we do not find these interpretative canons helpful. But the dormant mineral statutes result in a forfeiture of property, and "'equity abhors forfeitures.'"[24] As this is an equitable case,[25] if any doubt remains as to the meaning of "record owner," it should be construed against forfeiture.[26]

[2] We hold that the "record owner" of mineral interests, as used in § 57-229, may be determined not only from the register of deeds, but also from probate records in the county where the interests are located. Margaret therefore qualified as a "record owner" within the meaning of § 57-229. And because she acquired her interest in 1996, her 23-year statutory period has not elapsed and her property cannot be deemed abandoned.

### Relation Back

Before addressing the relation-back issue, we first address Gibbs' argument that Edward did not properly verify his claim of interest. As such, Gibbs argues that regardless whether the amended complaint relates back, Edward never publicly exercised his ownership rights within 23 years of the amended complaint.

We will not consider an issue on appeal that was not presented to or passed upon by the trial court.[27] Gibbs' counsel

---

[22] See, e.g., *Securities Investment Corporation v. Indiana Truck Corporation*, 129 Neb. 31, 260 N.W. 691 (1935).

[23] See, e.g., *Alisha C. v. Jeremy C.*, 283 Neb. 340, 808 N.W.2d 875 (2012).

[24] See, e.g., *Miller v. Radtke*, 230 Neb. 561, 567, 432 N.W.2d 542, 547 (1988).

[25] See § 57-228.

[26] See 36 Am. Jur. 2d *Forfeitures and Penalties* § 8 (2011).

[27] See, e.g., *Weber v. Gas 'N Shop, Inc.*, 278 Neb. 49, 767 N.W.2d 746 (2009).

acknowledged at oral argument that he did not raise this issue
before the trial court. And the trial court clearly did not pass
upon the issue because it noted in its order that the "sole issue"
before it was whether Gibbs' amended complaint related back.
We decline to address the merits of this argument.

We turn now to the relation-back issue. The district court
allowed Gibbs' amended complaint adding Edward as a defend-
ant to relate back to Gibbs' original complaint. Edward argues
this was error because § 25-201.02(2), which governs whether
amendments relate back, applies only when the amendment
"*changes* the party or the name of the party," rather than when
the amendment *adds* a new party. (Emphasis supplied.) Gibbs
argues that "change" should be construed to include adding a
new defendant.

Section 25-201.02(2) provides, in relevant part:

> If the amendment [to a pleading] changes the party or the
> name of the party against whom a claim is asserted, the
> amendment relates back to the date of the original plead-
> ing if (a) the claim or defense asserted in the amended
> pleading arose out of the conduct, transaction, or occur-
> rence set forth . . . in the original pleading, and (b) within
> the period provided for commencing an action the party
> against whom the claim is asserted by the amended plead-
> ing (i) received notice of the action such that the party
> will not be prejudiced in maintaining a defense on the
> merits and (ii) knew or should have known that, but for
> a mistake concerning the identity of the proper party, the
> action would have been brought against the party.

We must determine the meaning of the phrase "changes the
party or the name of the party." This is a question of law,[28]
which we resolve independently from the lower court.[29]

Section § 25-201.02(2) essentially codified our decision
in *Zyburo v. Board of Education*.[30] *Zyburo* explicitly adopted

---

[28] *Ricks, supra* note 8.

[29] *Peterson, supra* note 6.

[30] *Zyburo v. Board of Education*, 239 Neb. 162, 474 N.W.2d 671 (1991). See
John P. Lenich, Nebraska Civil Procedure § 15:10 (2008).

the then-existing Fed. R. Civ. P. 15(c) regarding relation back, as explained in *Schiavone v. Fortune*.[31] In *Zyburo*, we acknowledged that "[a]lthough Nebraska does not have a rule similar to rule 15(c), this court has nevertheless acknowledged the similarity between rule 15(c) and its case law, and has looked to federal decisions for guidance."[32] Though rule 15(c) has since been amended, the amended version contains substantially the same requirements as § 25-201.02(2), with the primary difference being the amount of time during which the amended party may receive notice.[33] We may still look to federal decisions for guidance regarding our interpretation of § 25-201.02(2). And because our case law does not specifically address this issue, we look to the federal courts for that guidance.

The federal courts are seemingly split on whether an amendment adding a new defendant, rather than substituting a new defendant, may relate back to the original pleading under rule 15(c)(1)(C). The only circuit court of appeals, that we have found, which has squarely addressed the change/add distinction is the Fourth Circuit in *Goodman v. Praxair, Inc*.[34] It concluded that changing a party should be construed to include adding a party.[35] Other circuits, though not expressly addressing the change/add distinction, have made conflicting statements in allowing or disallowing the addition of parties to relate back. For example, the Sixth Circuit recently reiterated its longstanding rule that "'"an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing . . . .'"'"[36] And the Seventh Circuit, in a case

---

[31] See, *Schiavone v. Fortune*, 477 U.S. 21, 106 S. Ct. 2379, 91 L. Ed. 2d 18 (1986); *Zyburo, supra* note 30.

[32] *Zyburo, supra* note 30, 239 Neb. at 169, 474 N.W.2d at 676.

[33] Compare § 25-201.02(2) with 28 U.S.C. app. rule 15(c)(1)(C) (Supp. V 2011). See, also, *Reid v. Evans*, 273 Neb. 714, 733 N.W.2d 186 (2007) (Miller-Lerman, J., concurring; McCormack, J., joins); Lenich, *supra* note 30.

[34] See *Goodman v. Praxair, Inc*., 494 F.3d 458 (4th Cir. 2007).

[35] See *id*.

[36] *Asher v. Unarco Material Handling, Inc*., 596 F.3d 313, 318 (6th Cir. 2010).

involving only the substitution of the proper defendant for an improper defendant, stated that

> [t]he only two inquiries . . . in deciding whether an amended complaint relates back . . . are, first, whether the defendant who is sought to be added by the amendment knew or should have known that the plaintiff, had it not been for a mistake, would have sued him instead *or in addition to suing the named defendant*[.][37]

A difference of opinion also exists in other, lower federal courts as to the scope of rule 15(c)(1)(C),[38] and among state courts with similar relation-back rules.[39]

*Erdman Co. v. Phoenix Land & Acquisition, LLC*[40] is a good example of a court's allowing the addition of parties, rather than just the substitution of parties, by construing "change" to include "add." In *Erdman Co.*, the plaintiffs initially sued the subcontractor of a project, Erdman Architecture and Engineering Company, and then later amended their complaint to also sue the general contractor, Erdman Company. The issue was whether the amended complaint which added Erdman Company as a defendant related back to the initial complaint.

---

[37] *Joseph v. Elan Motorsports Technologies Racing*, 638 F.3d 555, 559-60 (7th Cir. 2011).

[38] Compare *Erdman Co. v. Phoenix Land & Acquisition, LLC*, Nos. 2:10-CV-2045, 2:11-CV-2067, 2013 U.S. Dist. LEXIS 26440 (W.D. Ark. Feb. 25, 2013) (unpublished order denying partial summary judgment), and *In re Greater Southeast Community Hosp. Corp. I*, 341 B.R. 91 (D.C. 2006), with *Telesaurus VPC, LLC v. Power*, No. CV 07-01311-PHX-NVW, 2011 U.S. Dist. LEXIS 122623 (D. Ariz. Oct. 21, 2011) (unpublished order granting motion to dismiss), and *In re Hechinger Investment Co. of Delaware, Inc.*, 297 B.R. 390 (D. Del. 2003).

[39] Compare, e.g., *Brooks v. Isinghood*, 213 W. Va. 675, 584 S.E.2d 531 (2003); *Mullen v. Alarmguard of Delmarva, Inc.*, 625 A.2d 258 (Del. 1993); *Cobb v. Stephens*, 186 Ga. App. 648, 368 S.E.2d 341 (1988); and *Boudreau v. Gavel*, No. CV-91-123, 1992 Me. Super. LEXIS 163 (Me. Super. July 13, 1992) (unpublished order denying motion to amend), with *Kraly v. Vannewkirk*, 69 Ohio St. 3d 627, 635 N.E.2d 323 (1994); *Ray v. Alexandria Mall*, 434 So. 2d 1083 (La. 1983); *Windscheffel v. Benoit*, 646 S.W.2d 354 (Mo. 1983); and *Gause v. Smithers*, 384 S.C. 130, 681 S.E.2d 607 (S.C. App. 2009).

[40] *Erdman Co.*, supra note 38.

The federal district court addressed whether rule 15(c)(1)(C) allowed adding parties or only changing (i.e., substituting) parties. The court noted that although some courts took a narrow view of the rule's language and concluded that adding parties was not allowed, such a result was "contrary to the general thrust of the rule: keeping parties from being drug into suits late in the game without having had notice of the claims against them."[41] The court relied on the Federal Practice and Procedure treatise[42] to conclude that interpretation of the rule should be governed "by the general purpose of *Rule 15(c)* notice, rather than a stilted and technical reading."[43] The court referenced the 4th Circuit's decision in *Goodman*, along with the 11th Circuit's decision in *Makro Capital of America, Inc. v. UBS AG*,[44] and Judge Becker's partial concurrence and partial dissent in *Lundy v. Adamar of New Jersey, Inc.*,[45] as support for construing the rule's language to include the addition of parties.[46] The court also emphasized that the 1991 amendments to the relation-back rule encouraged a liberal construction.[47] The court concluded that "'[t]he lynchpin is notice'" and that the other provisions of the rule provided the requisite notice protection.[48] The court concluded that rule 15(c)(1)(C) allowed both addition and substitution of parties to relate back.[49]

---

[41] *Id.* at *10.

[42] 6A Charles Alan Wright et al., Federal Practice and Procedure § 1498.2 (3d ed. 2010).

[43] *Erdman Co., supra* note 38, 2013 U.S. Dist. LEXIS 26440 at *10.

[44] *Makro Capital of America, Inc. v. UBS AG*, 543 F.3d 1254 (11th Cir. 2008).

[45] *Lundy v. Adamar of New Jersey, Inc.*, 34 F.3d 1173 (3d Cir. 1994) (Becker, Circuit Judge, concurring in part, and in part dissenting).

[46] See *Erdman Co., supra* note 38.

[47] *Id.* (citing advisory committee note on 1991 amendments to federal rule 15(c)).

[48] *Id.* at *12.

[49] *Id.*

*Telesaurus VPC, LLC v. Power*[50] illustrates the reason-ing behind construing rule 15(c)(1)(C) to allow the substi-tution of parties, but not the addition of parties, to relate back. Telesaurus VPC, LLC (Telesaurus), sued RadioLink Corporation and Randy Power for alleged violations of the Federal Communications Act. After the expiration of the stat-ute of limitations, Telesaurus filed an amended complaint add-ing Patricia Power, Randy's ex-wife, as a defendant. Telesaurus then later filed a second amended complaint and served it on Patricia. The issue was whether Telesaurus' second amended complaint related back to its original complaint.

The federal district court noted that the issue turned on whether Telesaurus' amended pleading changed the party or the naming of the party against whom a claim was asserted.[51] The court noted that "[o]n its face, this language permits only substitution, not addition, of parties."[52] Nevertheless, the court recognized that courts were split over the scope of the rule 15(c)(1)(C)'s application. Finding no controlling precedent, the court determined that Patricia's interpretation prevailed because hers was "the only reading supported by both the language and the expressed purpose of the rule."[53] Regarding the language, the court noted that rule 15(c)(1)(C)(ii) allows relation back only where there was a "mistake concerning the proper party's identity," which "necessarily implies an 'improper party,' [and] not simply some other party."[54] In other words, the originally named defendant had to be an improper party, and the new party had to be substituted in as the proper party.

The court then undertook a lengthy analysis of rule 15(c)(1)(C)'s purpose, referencing the rules advisory commit-tee's commentary to the 1966 amendment. The court noted that the main driver behind the amendment, which allowed

---

[50] *Telesaurus VPC, LLC, supra* note 38.

[51] See *id.*

[52] *Id.* at *7.

[53] *Id.* at *8.

[54] *Id.* at *9.

amendments of parties, was lawsuits against the federal gov-
ernment where the "plaintiff mistakenly named . . . the wrong
officer or agency."[55] The amendment was meant to correct
that problem by "allowing the plaintiff to substitute the proper
party."[56] Thus, the amendment struck a "balance between let-
ting stale claims die and enforcing such claims against a
defendant whom the plaintiff failed to timely sue because the
plaintiff mistakenly believed that some other party caused the
alleged injury."[57] The court concluded that rule 15(c)(1)(C)'s
"placement of the proper defendant into the improper defend-
ant's shoes has no relation to a scenario where the plaintiff
wants to bring in an additional party."[58]

The *Telesaurus VPC, LLC* court recognized that other
authorities had concluded that the addition of parties was
permissible under the rule, but the court found those authori-
ties unpersuasive. For example, Moore's Federal Practice[59]
(without acknowledging the split in authority) stated that the
rule "expressly allows amended pleadings that change or add
parties to relate back."[60] But the court countered that the rule
"'expressly'" referred only to "change" and that taken in con-
text, "change" did not include "'add.'"[61] Federal Practice and
Procedure also favored relation back of an added party. But the
court noted that many of the cases cited in the treatise did "not
support its position, or [did] so only in dictum," and that a "fair
number of [those] cases involve[d] pure substitution without
mention of addition."[62] Some of the cases, while allowing the

---

[55] *Id.* (citing advisory committee note on 1966 amendments to federal rule 15(c)).

[56] *Id.* at *10.

[57] *Id.*

[58] *Id.* at *11.

[59] 3 James Wm. Moore, Moore's Federal Practice (3d ed. 2009).

[60] *Id.*, § 15.19[3][a] at 15-103.

[61] *Telesaurus VPC, LLC, supra* note 38, 2011 U.S. Dist. LEXIS 122623 at *12 n.2.

[62] *Id.* at *14 (citing *Joseph, supra* note 37; *Marks v. Prattco, Inc.*, 607 F.2d 1153 (5th Cir. 1979); and *Bush v. Sumitomo Bank and Trust Co., Ltd.*, 513 F. Supp. 1051 (E.D. Tex. 1981)).

addition of parties, took that position without addressing the change/add distinction,[63] and one case simply disposed of the issue summarily by referring to Federal Practice and Procedure in a footnote.[64]

The *Telesaurus VPC, LLC* court acknowledged that the Fourth Circuit's decision in *Goodman* was consistent with Federal Practice and Procedure's position. But the court noted that *Goodman*'s resolution of the issue was unnecessary to the case and disagreed with the Fourth Circuit's reasoning. The court reasoned that rule 15(c)(1)(C) "is not a set of factors to balance, with the most weight placed on the notice requirement,"[65] but instead "establishes elements which are either satisfied or not."[66] The court reasoned that the liberal policy in favor of amendments could not trump the language of the rule.

Finally, the court took issue with those authorities which had concluded that adding a party was "'essentially no different from changing a party.'"[67] While the court recognized that might be true in a vacuum, the change required by the rule "is a change that takes an already 'asserted' claim and reassigns it to a party that 'knew or should have known' it was 'the proper party.'"[68] As such, the court concluded that the rule referred to a substitution, rather than an addition.

We find the reasoning of *Telesaurus VPC, LLC* persuasive. The court's analysis of the federal commentators (and the decisions cited in support of their position) is on point. Most important, the language of the rule controls, and

---

[63] See *Telesaurus VPC, LLC, supra* note 38 (citing *Abdell v. City of New York*, 759 F. Supp. 2d 450 (S.D.N.Y. 2010); *Colombo v. S.C. Dept. of Social Services*, 221 F.R.D. 374 (E.D.N.Y. 2004); and *Gabriel v. Kent General Hosp. Inc.*, 95 F.R.D 391 (D. Del. 1982)).

[64] See *id.* (citing *Advanced Power Systems v. Hi-Tech Systems*, 801 F. Supp. 1450 (E.D. Pa. 1992)).

[65] *Id.* at *17.

[66] *Id.* at *17-18.

[67] *Id.* at *18 (quoting *Lundy, supra* note 45 (Becker, Circuit Judge, concurring in part, and in part dissenting)).

[68] *Id.* at *18.

§ 25-201.02(2) expressly applies only to amendments which "change[] the party or the name of the party against whom a claim is asserted." The meaning of "change[]" is not interpreted in a vacuum, but in relation to the words around it. Reading the language as a whole indicates that it refers to the substitution of parties, rather than the wholesale addition of parties. Though certain courts and commentators advocate for a different approach—premised on the overriding importance of notice—that approach ignores that the relation-back rule "plainly sets forth an exclusive list of *requirements*,"[69] rather than factors to be weighed.

[3] Moreover, we do not read the U.S. Supreme Court's recent decision in *Krupski v. Costa Crociere S. p. A.*,[70] a case Gibbs relies on in its brief, as requiring a different conclusion. The *Krupski* decision focused on the nature of "mistake" as used in rule 15(c)(1)(C)(ii), and not the nature of "change" in rule 15(c)(1)(C).[71] And importantly, *Krupski* did not address a situation where the plaintiff was attempting to add a party; rather, the plaintiff was attempting to substitute the proper party (Costa Crociere) for an improper party (Costa Cruise).[72] That is not the case here. We hold that § 25-201.02(2) applies only to an amendment that "changes the party or the name of the party" and that refers to a substitution, rather than to an addition, of parties.

## CONCLUSION

For the foregoing reasons, we reverse the decision of the district court.

REVERSED.

McCORMACK, J., participating on briefs.
HEAVICAN, C.J., not participating.

---

[69] *Krupski v. Costa Crociere S. p. A.*, ___ U.S. ___, 130 S. Ct. 2485, 2496, 177 L. Ed. 2d 48 (2010) (emphasis supplied).

[70] *Krupski, supra* note 69.

[71] See, *id.*; *DeBois v. Pickoff*, No. 3:09cv230, 2011 U.S. Dist. LEXIS 39041 (S.D. Ohio Mar. 28, 2011) (unpublished decision).

[72] See, *Krupski, supra* note 69; *DeBois, supra* note 71.