Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
01/27/2017 09:08 AM CST

Ann Kelly, in her own behalf and on behalf of the
Estate of Stephen Kelly, deceased, appellant, v.
Saint Francis Medical Center, a corporation
organized under the laws of the State of
Nebraska, et al., appellees.

___ N.W.2d ___

Filed January 27, 2017.    No. S-16-051.

1. **Pleadings: Appeal and Error.** An appellate court reviews a district
   court's decision on a motion for leave to amend a complaint for an abuse
   of discretion.
2. **Motions to Dismiss: Appeal and Error.** An appellate court reviews a
   district court's order granting a motion to dismiss de novo.
3. **Rules of the Supreme Court: Pleadings: Appeal and Error.** An appel-
   late court reviews the district court's denial of a motion to amend under
   Neb. Ct. R. Pldg. § 6-1115(a) for an abuse of discretion. However, an
   appellate court reviews de novo any underlying legal conclusion that the
   proposed amendments would be futile.
4. **Attorneys at Law: Rules of the Supreme Court.** No nonlawyer shall
   engage in the practice of law in the State of Nebraska or in any man-
   ner represent that such nonlawyer is authorized or qualified to practice
   law in the State of Nebraska except as may be authorized by published
   opinion or court rule.
5. **Attorneys at Law: Rules of the Supreme Court: Words and Phrases.**
   The term "nonlawyer" means any person not duly licensed or other-
   wise authorized to practice law in the State of Nebraska. The term also
   includes any entity or organization not authorized to practice law by
   specific rule of the Supreme Court whether or not it employs persons
   who are licensed to practice law.
6. ____: ____: ____. The practice of law or to practice law is the applica-
   tion of legal principles and judgment with regard to the circumstances
   or objectives of another entity or person which require the knowledge,

judgment, and skill of a person trained as a lawyer. This includes, but is not limited to selection, drafting, or completion, for another entity or person, of legal documents which affect the legal rights of the entity or person.

Appeal from the District Court for Hall County: Teresa K. Luther, Judge. Affirmed.

Nichole S. Bogen and Tyler K. Spahn, of Sattler & Bogen, L.L.P., for appellant.

Patrick G. Vipond, Brian J. Brislen, and Cathy S. Trent-Vilim, of Lamson, Dugan & Murray, L.L.P., for appellee Saint Francis Medical Center.

James A. Snowden and Krista M. Carlson, of Wolfe, Snowden, Hurd, Luers & Ahl, L.L.P., for appellee Jeff S. Burwell.

Heavican, C.J., Wright, Miller-Lerman, Cassel, Stacy, Kelch, and Funke, JJ.

Heavican, C.J.

## I. INTRODUCTION

Ann Kelly filed, in her own behalf and on behalf of the estate of Stephen Kelly, a pro se wrongful death action against Saint Francis Medical Center (Saint Francis), Dr. Jeff S. Burwell, and other "fictitious entities." Ann later filed, through counsel, a motion for leave to file an amended complaint. The district court concluded that an amended complaint could not relate back to the date of the original filing and dismissed the action as untimely. Ann appeals. We affirm.

## II. BACKGROUND

On March 9, 2013, Stephen suffered a fall in his home. He was transported to Saint Francis' emergency department on March 10. Burwell attended to Stephen and ordered an x ray of Stephen's shoulder, a CT scan of his head, and an injection

of pain medication. Based on the results of the tests, Burwell prescribed Toradol and discharged Stephen. Two days later, on March 12, Ann found Stephen unresponsive. Stephen was transported to Saint Francis, where he died on March 16.

On March 10, 2015, Ann filed a pro se complaint in her own behalf and on behalf of the estate of Stephen against Saint Francis, Burwell, "John and Jane Does I-X; ABC Corporations; and XYZ Partnerships." In Ann's complaint, she alleged that (1) Burwell provided negligent medical care to Stephen, which was the direct cause of his death, and (2) Saint Francis provided negligent medical care to Stephen, which was the direct cause of his death. Ann signed the complaint as a "Pro Se Plaintiff." A law firm located in Arizona assisted Ann in drafting the complaint. It is undisputed that at the time of filing, Ann was not a licensed attorney.

On April 22, 2015, Saint Francis filed its answer, denying Ann's allegations seeking dismissal of her complaint. On August 12, Saint Francis and Burwell filed a motion to dismiss, alleging that (1) the complaint fails to state facts sufficient to state a cause of action, (2) Ann was engaged in the unauthorized practice of law, and (3) the complaint showed on its face that any claim was barred by the statute of limitations.

Ann subsequently retained counsel. On August 28, 2015, counsel entered an appearance. On that same date, Ann, through counsel, filed a motion to continue. On September 1, Ann filed a motion for leave to file an amended complaint. In the motion, Ann stated that she was the special administrator of the estate of Stephen when the complaint was filed. Ann further stated that she filed her pro se complaint within the 2-year statute of limitations, that she had retained counsel for her amended complaint, and that she sought leave to file an amended complaint that would relate back to the date of the original complaint and cure any defects in the original complaint, including any unauthorized practice of law. Ann argued that an amended complaint should relate back to the date of the original complaint, because it would change only

her capacity as the personal representative of the estate of Stephen, or, in the alternative, it should relate back, because all defendants received notice of this action and would not be prejudiced by the filing of an amended complaint.

Following a hearing, the district court denied Ann's motion for leave to file an amended complaint and dismissed the motions filed against Saint Francis and Burwell. The court reasoned that "any pleadings filed by nonattorneys are of no effect." They are a "nullity" and "because they are a nullity, it is as if they never existed and therefore no amendment can relate back to them or save an action from a valid statute of limitations defense." Applying this reasoning to the facts of the case, the court held that the original complaint filed by Ann was a nullity and that "an amended complaint cannot relate back to something that never existed, nor can a nonexistent complaint be corrected."

Ann appeals.

## III. ASSIGNMENTS OF ERROR

Ann assigns, restated, that the district court erred in determining that (1) the prior complaint was a nullity and (2) an amended complaint, prepared and signed by counsel on Ann's behalf, could not relate back to the filing of the original pro se complaint.

## IV. STANDARD OF REVIEW

[1,2] An appellate court reviews a district court's decision on a motion for leave to amend a complaint for an abuse of discretion.[1] An appellate court reviews a district court's order granting a motion to dismiss de novo.[2]

[3] An appellate court reviews the district court's denial of a motion to amend under Neb. Ct. R. Pldg. § 6-1115(a) for an abuse of discretion. However, we review de novo any

---

[1] *Gonzalez v. Union Pacific RR. Co.*, 282 Neb. 47, 803 N.W.2d 424 (2011).

[2] *Id.*; *Central Neb. Pub. Power Dist. v. North Platte NRD*, 280 Neb. 533, 788 N.W.2d 252 (2010).

underlying legal conclusion that the proposed amendments would be futile.[3]

## V. ANALYSIS

### 1. Whether Prior Complaint Was Nullity

#### (a) Unauthorized Practice of Law

First, to find whether the prior complaint was a nullity, we must determine whether the filing of the pro se complaint by Ann on behalf of the estate was the unauthorized practice of law, as was found by the district court.

[4-6] No nonlawyer shall engage in the practice of law in Nebraska or in any manner represent that such nonlawyer is authorized or qualified to practice law in Nebraska except as may be authorized by published opinion or court rule.[4] The term "'[n]onlawyer'" is defined by the rules as "any person not duly licensed or otherwise authorized to practice law in the State of Nebraska," including "any entity or organization not authorized to practice law by specific rule of the Supreme Court whether or not it employs persons who are licensed to practice law."[5] The term "'practice of law'" is defined as "the application of legal principles and judgment with regard to the circumstances or objectives of another entity or person which require the knowledge, judgment, and skill of a person trained as a lawyer."[6] This includes, but is not limited to, "[s]election, drafting, or completion, for another entity or person, of legal documents which affect the legal rights of the entity or person . . . ."[7]

---

[3] See *Bailey v. First Nat. Bank of Chadron*, 16 Neb. App. 153, 741 N.W.2d 184 (2007).

[4] Neb. Ct. R. § 3-1003.

[5] Neb Ct. R. § 3-1002(A).

[6] Neb Ct. R. § 3-1001.

[7] § 3-1001(B).

In *Waite v. Carpenter*,[8] the Nebraska Court of Appeals held that a nonattorney was engaged in the unauthorized practice of law when he filed a wrongful death action on behalf of the estate for which he was a personal representative. The court noted that under Neb. Rev. Stat. § 30-2464(a) (Reissue 1989), a personal representative "'is a fiduciary who shall observe the standards of applicable trustees . . . '" and "one who seeks to represent the legal interests of the personal representative must be an attorney."[9] In addition, "[Neb. Rev. Stat.] § 7-101 [(Reissue 1991)] prevents the filing of any paper in any action 'unless the same bears the endorsement of some admitted attorney, or is drawn, signed, and presented by a party to the action or proceeding.'"[10] The court reasoned that

> the pleadings were not signed by an admitted attorney, but, rather, by [the personal representative], and it is only where a party acts in a nonrepresentative capacity that he may file his own pleadings. There can be no question that [the personal representative] was engaged in the practice of law in violation of § 7-101.[11]

Similarly, this court held in *Back Acres Pure Trust v. Fahnlander*[12] that the trustees of a trust were engaged in the unauthorized practice of law when they filed complaints pro se on behalf of the trust. This court reasoned that

> a trustee's duties in connection with his or her office do not include the right to present argument pro se in courts of the state, because in this capacity such trustee would be representing interests of others and would therefore be engaged in the unauthorized practice of law. See *In re Ellis*, 53 Haw. 23, 487 P.2d 286 (1971).

---

[8] *Waite v. Carpenter*, 1 Neb. App. 321, 496 N.W.2d 1 (1992).

[9] *Id*. at 325, 328, 496 N.W.2d at 4,5.

[10] *Id.* at 328, 496 N.W.2d at 5.

[11] *Id.*

[12] *Back Acres Pure Trust v. Fahnlander*, 233 Neb. 28, 443 N.W.2d 604 (1989).

> Because [the nonlawyer] had no authority to file a brief in this matter, either in his own behalf or on behalf of appellants, appellants' briefs are ordered stricken, and the appeal is dismissed.[13]

In the present case, both parties agree that Ann was a non-attorney at the time she filed a complaint on behalf of the estate. In her complaint, Ann sought to represent the interests of the estate. Ann drafted the complaint and signed it as a pro se plaintiff, though she apparently had the help of Arizona counsel in doing so. With this legal document, Ann is seeking to "affect the legal rights" of the estate.[14] This constitutes the unauthorized practice of law.

### (b) Dismissal of Ann's Unauthorized Practice of Law Because It Was "nullity"

Ann argues that her pro se complaint should not have been dismissed as a "nullity" because (1) there was no flagrant and persistent unauthorized practice of law, (2) the basis for the prohibition against unauthorized practice is not promoted by dismissal in this case, and (3) dismissal should not be required based on the harsh consequences to litigants. Saint Francis and Burwell argue that the district court did not abuse its discretion when it dismissed Ann's complaint, because a legal proceeding in which a party is represented by a person not admitted to practice law is a nullity and is subject to dismissal.

### (i) Flagrant and Persistent Unauthorized Practice

Ann contends that the term "nullity" has a technical definition of "'legally void,'" but that it has been applied in similar Nebraska cases with discretionary language.[15] Furthermore,

---

[13] *Id*. at 29, 443 N.W.2d at 605.

[14] See § 3-1001(B).

[15] Brief for appellant at 9.

Ann argues that courts have consistently premised dismissal only on flagrant and persistent unauthorized acts.

In *Niklaus v. Abel Construction Co.*,[16] this court held that "[t]he flagrant and persistent unlawful practice of law" committed by a disbarred attorney "require[d] that the proceedings be held to be a nullity and the action dismissed." The disbarred attorney prepared and filed the summons, submitted the documents to the court, and was "actively, openly, and persistently performing the duties and exercising the powers of a member of the bar of this state."[17] We stated that "'[p]roceedings in a suit by a person not entitled to practice are a nullity, and the suit may be dismissed.'"[18] This court reasoned that "[t]he dismissal of a proceeding for such a cause is a drastic remedy and may not be required in all cases. The extent of the unlawful practice . . . in this case requires that it be done."[19]

This court subsequently decided *Steinhausen v. HomeServices of Neb.*,[20] in which the plaintiff, a nonlawyer, filed a pro se complaint to the district court in his own behalf and on behalf of the limited liability company of which he was the sole member. The complaint was dismissed on summary judgment, and he filed a brief on appeal. This court ruled that a licensed member of the Nebraska bar must represent a company in the courts of this state. Therefore, this court held that the pro se complaint filed by the plaintiff in his own behalf and on behalf of the company he owned was a nullity to the extent that he had appealed on behalf of the company, but was valid as to the errors assigned in his own behalf. In its analysis, this court did not discuss whether the acts constituted flagrant and persistent

---

[16] *Niklaus v. Abel Construction Co.*, 164 Neb. 842, 852-53, 83 N.W.2d 904, 911 (1957).

[17] *Id*. at 848, 83 N.W.2d at 909.

[18] *Id*. at 852, 83 N.W.2d at 911.

[19] *Id.*

[20] *Steinhausen v. HomeServices of Neb.*, 289 Neb. 927, 857 N.W.2d 816 (2015).

unauthorized acts in determining that the complaint as to the company was a nullity. Rather, the unauthorized practice of law was sufficient to find that the pro se complaint on behalf of the company was a nullity.

Ann argues that the opinion in *Niklaus* indicates that this court has the discretion to hold that an unauthorized practice of law is a nullity depending on the extent of the unlawful practice. However, this court's more recent decision in *Steinhausen* shows that the extent of the unauthorized practice of law is not a consideration in a court's determination of whether the unauthorized filing of a legal document is a nullity.

Similarly to *Steinhausen*, Ann drafted and filed a complaint that constituted the unauthorized practice of law. While she later obtained counsel to file her motion for leave to file an amended complaint and her subsequent appeal of the court's ruling on the motion, the single act constituting the unauthorized practice of law was sufficient for the court to rule that her complaint was a nullity, as we found in *Steinhausen*. The court was not required to find that Ann's acts constituted flagrant and persistent unauthorized acts.

### (ii) Whether Basis for Prohibition Against Unauthorized Practice of Law Is Promoted by Dismissal

Ann contends that the policy supporting the prohibition against the unauthorized practice of law is not promoted by dismissal in this case. Burwell argues that any other result would not serve the policy considerations at issue, because this protects the estate and discourages the unauthorized practice of law. Saint Francis does not address this issue.

In *Waite*, the Court of Appeals held that policy considerations for the rule against nonattorneys practicing law for others was not "to perpetuate a professional monopoly," but, rather,

> (1) to protect citizens from injury caused by the ignorance and lack of skill on the part of those who are untrained

and inexperienced in the law, (2) to protect the courts in their administration of justice from interference by those who are unlicensed and are not officers of the court, and (3) to prevent the unscrupulous from using the legal system for their own purposes to the harm of the system and those who may unknowingly rely upon them.[21]

The court further stated in *Waite* that in wrongful death actions, "one who seeks to represent the legal interests of the personal representative must be an attorney" and "[t]his rule protects the estate, its heirs, and its creditors."[22] By dismissing the case based on the unlawful filing of a wrongful death complaint by a nonlawyer on behalf of the estate, the lower court clearly promoted the policy reasons behind the prohibition against the unlawful practice of law and essentially sought to protect the estate. The policy considerations behind the prohibition of the unauthorized practice are furthered by the lower court's decision that the prior complaint was a nullity.

### (iii) Whether Dismissal Should Not Be Required Based on Harsh Consequences to Litigants

Ann contends that in cases such as this, in which the unauthorized practice of law was minimal and the party has taken steps to cure the unauthorized practice, the court should be permitted to allow the party to cure the unauthorized practice.

There is a split of authority on the question of whether the unauthorized practice of law renders a proceeding a nullity or merely amounts to an amendable defect.[23] Some courts hold that the unauthorized practice of law amounts to a nullity and find that the "proscription on the unauthorized practice of law is of paramount importance in that it protects the public from

---

[21] *Waite v. Carpenter, supra* note 8, 1 Neb. App. at 330, 496 N.W.2d at 6.

[22] *Id*. at 328, 496 N.W.2d at 5.

[23] *Davenport v. Lee*, 348 Ark. 148, 72 S.W.3d 85 (2002).

those not trained or licensed in the law."[24] Other jurisdictions find that it merely amounts to an amendable defect in "an attempt to avoid what they deem to be the unduly harsh result of dismissal on technical grounds."[25]

In *Steinhausen*,[26] this court did not address any harsh consequences that would result from dismissing the plaintiff's claims as related to his limited liability company. Rather, this court reasoned:

> The prohibition of the unauthorized practice of law is not for the benefit of lawyers. Prohibiting the unauthorized practice of law protects citizens and litigants in the administration of justice from the mistakes of the ignorant on the one hand and the machinations of the unscrupulous on the other.[27]

This court then simply held that "because [the plaintiff] is not licensed to practice law in Nebraska, his appeal . . . is a nullity."[28] Thus, while we have not explicitly addressed the issue of whether the harsh consequence to litigants should be taken into account, we have shown that our paramount concern

---

[24] *Id.* at 160, 72 S.W.3d at 93. See, *Jones ex rel. Jones v. Correctional Med. Services*, 401 F.3d 950 (8th Cir. 2005); *Ex parte Ghafary*, 738 So. 2d 778 (Ala. 1998); *Ratcliffe v. Apantaku*, 318 Ill. App. 3d 621, 742 N.E.2d 843, 252 Ill. Dec. 305 (2000); *Garlock Sealing Technologies, LLC v. Pittman*, Nos. 2008-IA-01572-SCT, 2008-IA-01584-SCT, 2008-IA-01599-SCT, 2010 WL 4009151 (Miss. Oct. 14, 2010).

[25] *Davenport v. Lee, supra* note 23, 348 Ark. at 160, 72 S.W.3d at 93. See, *Operating Eng. Local 139 Health v. Rawson Plumbing*, 130 F. Supp. 2d 1022 (E.D. Wis. 2001); *Boydston v. Strole Development Co.*, 969 P.2d 653 (Ariz. 1998); *Downtown Disposal Services, Inc. v. City of Chicago*, 2012 IL 112040, 979 N.E.2d 50, 365 Ill. Dec. 684 (2012); *Richardson v. Dodson*, 832 S.W.2d 888 (Ky. 1992); *First Wholesale v. Donegal*, 143 Md. App. 24, 792 A.2d 325 (2002); *Mikesic v. Trinity Lutheran Hosp.*, 980 S.W.2d 68 (Mo. App. 1998); *Starett v. Shepard*, 606 P.2d 1247 (Wyo. 1980).

[26] *Steinhausen v. HomeServices of Neb., supra* note 20.

[27] *Id.* at 935, 857 N.W.2d at 825.

[28] *Id.* at 948, 857 N.W.2d at 833.

in such cases is to protect the public from the unauthorized practice of law.

In order to sufficiently address this paramount concern, it is not necessary for this court to engage in a calculation as to whether the consequences for the unauthorized practice of law are proportional to the gravity of the harm done to the public. We regard the unauthorized practice of law as a serious offense, and we therefore favor the approach of those jurisdictions that have found that any unauthorized practice is a nullity.

Under a de novo standard of review, the district court correctly held that Ann's complaint was a nullity and the district court was not required to find flagrant and persistent unauthorized acts. Ann's first assignment of error is without merit.

## 2. Whether Amended Complaint Could Relate Back and Cure Defects of Initial Complaint

Ann contends that under *Genthon v. Kratville*,[29] an amended complaint filed by counsel could have related back to her pro se complaint and cured any defects. But Saint Francis and Burwell, consistent with their earlier arguments, argue that under *Waite*[30] and Neb. Rev. Stat. § 7-101 (Reissue 2012), pro se pleadings filed on behalf of others are a nullity, thus they have no legal effect and are the same as if they have never existed. Saint Francis and Burwell further argue that *Genthon* is distinguishable, because it merely addressed whether the substitution of a correct party could relate back to the original complaint when the attorney committed malpractice, not if the amended complaint could relate back in circumstances involving the unauthorized practice of law. Saint Francis and Burwell also contend that *Genthon* was based on Neb. Rev. Stat. § 25-852 (Reissue 1995), which has since been repealed.[31]

---

[29] *Genthon v. Kratville*, 270 Neb. 74, 701 N.W.2d 334 (2005).

[30] *Waite v. Carpenter, supra* note 8.

[31] See 2002 Neb. Laws, L.B. 876, § 92 (operative Jan. 1, 2003).

In *Genthon*,[32] this court held that an amended complaint for a wrongful death action related back to cure the defects of the complaint deemed a nullity. In that case, the plaintiff retained an attorney to represent his family in a wrongful death action against the nursing home where the plaintiff's mother had died. After the attorney withdrew from the case, the plaintiff filed a pro se wrongful death petition. The wrongful death petition was brought in the plaintiff's name, individually, instead of in the name of a personal representative for the benefit of the next of kin, as required by Neb. Rev. Stat. § 30-810 (Reissue 1995).

The attorney resumed representation of the case 2 days before the service deadline and agreed to serve the defendant prior to the service deadline, but failed to do so. The special administrator of the estate brought a legal malpractice action against the attorney. The attorney demurred, asserting that the statute of limitations barred the action. That motion was sustained. The special administrator filed an amended legal malpractice petition, relying on the attorney's second period of representation, appointed new counsel, and sought to file an amended complaint to cure the defects of the original plaintiff's pro se complaint.

This court stated that § 25-852 was to be "liberally construed so as to permit amendments when proposed at opportune times in furtherance of justice."[33] This court held that the plaintiff's pro se wrongful death petition was defective because it named the wrong plaintiff, but the court allowed for the substitution of a new party in the complaint because, under § 25-852, "[it] would not introduce a new cause of action or, in other words, result in an attempt to state facts giving rise to a wholly distinct and different legal obligation against the defendant or change the liability sought to be enforced."[34]

---

[32] *Genthon v. Kratville, supra* note 29.

[33] *Id.* at 81, 701 N.W.2d at 343.

[34] *Id.* at 82, 701 N.W.2d at 344.

This court further held that the amended petition would relate back to the filing date of the original petition, because the amendment did not "introduce a new cause of action, but, rather, relie[d] upon the same set of facts as the original pleading and the defendant is not prejudiced by the amendment."[35]

However, since § 25-852 has been repealed, it is more instructive to look at recent cases that discuss the current pleading amendment statute, Neb. Rev. Stat. § 25-201.02 (Reissue 2016).

In *Gibbs Cattle Co. v. Bixler*,[36] the defendant argued that the word "'*changes*'" in the phrase contained in § 25-201.02(2), "'[i]f the amendment [to a pleading] changes the party or the name of the party against whom a claim is asserted, the amendment relates back to the date of the original pleading . . . ,'" should be construed to include the addition of a party. This court analyzed the split in federal case law as to whether "changes" included the "addition" of parties and reasoned, "[t]hough certain courts and commentators advocate for a different approach—premised on the overriding importance of notice—that approach ignores that the relation-back rule 'plainly sets forth an exclusive list of *requirements*,' rather than factors to be weighed."[37]

Based on this court's approach that the "language of the rule controls," we held that § 25-201.02(2) expressly applies only to amendments which "'change[] the party or the name of the party against whom a claim is asserted'" and does not allow for the "addition of parties."[38]

In *Reid v. Evans*,[39] this court held that an amended complaint did not relate back to the original complaint under § 25-201.02

---

[35] *Id.* at 83, 701 N.W.2d at 344.

[36] *Gibbs Cattle Co. v. Bixler*, 285 Neb. 952, 963, 831 N.W.2d 696, 704 (2013).

[37] *Id.* at 970, 831 N.W.2d at 708 (emphasis in original).

[38] *Id*. at 969-70, 831 N.W.2d at 708.

[39] *Reid v. Evans*, 273 Neb. 714, 733 N.W.2d 186 (2007).

because the original complaint was a nullity. The plaintiff filed a negligence action against the defendant who had died prior to the filing of the action. Thus, service was not completed on the defendant and a complaint naming his estate as defendant was not served within the 6-month statutory timeframe for service of a complaint. The plaintiff argued that under § 25-201.02, she should have been allowed to amend her complaint, and that such an amendment would have been effective as of the date she commenced her lawsuit.

This court disagreed, reasoning that § 25-201.02 "only allows an amendment to relate back to the original filing date if the party who is being added by the amendment was aware of the claim during 'the period provided for commencing an action' against such party."[40] Because the defendant did not receive notice prior to the expiration of the statute of limitations, the court held that the plaintiff could not benefit from the relation back statute. The court further held that because the plaintiff's lawsuit had been dismissed, her subsequent motion to amend and take advantage of relation back was a nullity and the court lacked jurisdiction to make any further orders other than to formalize the dismissal.

Saint Francis cites the concurrence in *Reid*, which states that "there is a more fundamental reason in relation-back jurisprudence why [the plaintiff's] motion to amend by invoking relation back was inapplicable."[41] The concurrence further explains that

> [i]n order for an amendment to relate back to the original filing date, there must be an action pending at the time the proposed amendment is filed. If a lawsuit has already been dismissed, there is nothing for a subsequent amendment to relate back to. . . . Because [the plaintiff's]

---

[40] *Id.* at 721, 733 N.W.2d at 190.

[41] *Id.* at 722, 733 N.W.2d at 191 (Miller-Lerman, J., concurring; McCormack, J., joins).

lawsuit had been dismissed, there was nothing for her proposed amendment to relate back to.[42]

Burwell cites *Galaxy Telecom v. SRS, Inc.*,[43] in which the Court of Appeals held that if pleadings are a nullity, the court should not give them "any effect." In *Galaxy Telecom*, a non-lawyer member of the defendant corporation timely filed a pro se answer to the plaintiff's complaint. The court held that it would "not give any effect to the papers signed and filed" by the nonlawyer member on behalf of the corporation because it was an unauthorized practice of law.[44] And "the responsive letter filed by [the defendant] on behalf of [the corporation] was a nullity and did not constitute an answer."[45] The stipulation signed by the nonlawyer member was thus "also of no effect."[46] The court analyzed the facts as though the corporation had not filed an answer and held default judgment was appropriate.

Burwell also cites the Arkansas Supreme Court's decision in *Davenport v. Lee*,[47] mentioned above, in which a nonattorney personal representative filed a pro se complaint in a wrongful-death action on behalf of the decedent's estate. The Arkansas Supreme Court found that the defect "rendered the complaint a nullity" and held that "the original complaint, as a nullity never existed, and thus, an amended complaint cannot relate back to something that never existed, nor can a nonexistent complaint be corrected."[48]

In *Genthon*, this court analyzed the relation-back issue under § 25-852. We stated that it "liberally construed" the

---

[42] *Id.* at 722-23, 733 N.W.2d at 192.

[43] *Galaxy Telecom v. SRS, Inc.*, 13 Neb. App. 178, 185, 689 N.W.2d 866, 873 (2004).

[44] *Id.*

[45] *Id.*

[46] *Id.*

[47] *Davenport v. Lee, supra* note 23.

[48] *Id.* at 157, 160, 72 S.W.3d at 89, 94.

relation-back statute to permit amendments when in further-ance of justice.[49] But as noted above, that statute has since been repealed. Therefore, this court's analysis in *Genthon* is no longer controlling.

In *Gibbs Cattle Co. v. Bixler* and *Reid v. Evans*, this court strictly interpreted the current pleading amendment statute, § 25-201.02, and held that the amended complaint could not relate back to the original complaint to cure the defects of the original complaint. The concurrence in *Reid* further explains that there must be an action pending at the time in order for § 25-201.02 to allow relation back. And if, as the Court of Appeals held in *Galaxy Telecom*, a complaint deemed a nul-lity due to the unauthorized practice of law is not given "any effect" and does not "constitute" a complaint,[50] then there is nothing for an amended complaint to relate back to under this court's interpretation of § 25-201.02.

Similarly to the Arkansas Supreme Court's reasoning in *Davenport*, Ann's amended complaint, which would be filed by counsel after the statute of limitations had run, cannot relate back to her pro se complaint. The pro se complaint consti-tuted an unauthorized practice of law; thus, it was "something that never existed," and, as a nonexistent complaint, it cannot be corrected.

Ann's second assignment of error is without merit.

## VI. CONCLUSION

The district court did not err in holding that (1) the prior complaint was a nullity and (2) an amended complaint could not relate back to the filing of the original pro se complaint.

The decision of the district court is affirmed.

Affirmed.

---

[49] See *Genthon v. Kratville, supra* note 29, 270 Neb. at 81, 701 N.W.2d at 343.

[50] See *Galaxy Telecom v. SRS, Inc., supra* note 43, 13 Neb. App. at 185, 689 N.W.2d at 873.