784 N.W.2d 432 (2010)
280 Neb. 130
Barbara A. RICKS, appellee,
v.
Daniel VAP, also known as Daniel S. Vap, and Joe L. Vap, appellees, and
Blanche Vap et al., appellants.
No. S-09-991.
Supreme Court of Nebraska.
June 25, 2010.
*433 George G. Vinton, North Platte, for appellants.
Daylene A. Bennett, of Burger & Bennett, P.C., Mccook, for appellee Barbara A. Ricks.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
GERRARD, J.
Nebraska's dormant mineral statutes[1] provide that a severed mineral interest shall be considered abandoned if, for a period of 23 years, its "right of ownership" is not publicly exercised by its record owner. Among the ways in which the record owner can exercise the right of ownership are "leasing" or "transferring" the mineral interest with a recorded instrument.[2] But if a severed mineral interest is abandoned, the owner of the surface estate can sue to terminate the mineral interest.[3]
In this case, the record owners of severed mineral interests executed leases which were allowed to expire at the end of their 5-year terms. The owner of the surface estate sued to terminate the mineral interests more than 25 years after the leases were executed and recorded, but just over 21 years after the leases expired. The question presented in this appeal is whether the 23-year period prescribed by the dormant mineral statutes began to run when the leases were executed and recorded or when they expired. Because we conclude that the 23-year dormancy period began to run when the leases were executed and recorded, we affirm the judgment of the district court which had properly granted relief to the owner of the surface estate.

BACKGROUND
There are two parcels of land at issue in this appeal: the northwest and southwest quarters of a section of land in Hitchcock County, Nebraska. The record owner of the surface estate is Barbara A. Ricks, the plaintiff in this case. Ricks is also the record owner of a one-half interest in the mineral estate for both parcels. The record owner of the remaining mineral interest in the northwest quarter was Daniel Vap, and the record owner of the remaining mineral interest in the south-west quarter was Joe Vap, Daniel's father. Daniel and Joe are deceased, and this action is being defended by their various heirs, who we refer to collectively as the "Vap heirs."
The last activity regarding the mineral estate recorded in Hitchcock County are two leases of the mineral interests now claimed by the Vap heirs. The mineral estate for the northwest quarter was leased to the Gemini Corporation (Gemini) for a 5-year term by Daniel and his wife in a lease dated November 22, 1983, and recorded on January 19, 1984. The mineral estate for the southwest quarter was the subject of two 5-year leases to Gemini, both dated December 7, 1983: one executed *434 by Joe's widow and the other by Joe's children and their spouses. One of the southwest quarter leases was recorded on January 19, 1984, and the other was recorded on March 6. Although the record does not seem to conclusively establish it, we assume for purposes of this appeal that Gemini made the payments necessary under the leases to extend them for their full 5-year terms.
Ricks filed her complaint to terminate the allegedly abandoned mineral interests on January 22, 2009. The Vap heirs answered, alleging that the right of ownership in the disputed mineral interests had been publicly exercised at the termination of the leases, in 1988less than 23 years before Ricks' complaint was filed. Ricks moved for summary judgment, which the district court granted, reasoning that the statutory period had only been extended from the dates the leases were executed, more than 23 years earlier. The Vap heirs appeal.

ASSIGNMENT OF ERROR
The Vap heirs assign, consolidated and restated, that the district court erred in determining that the leases did not constitute a public exercise of the right of ownership of the severed mineral interests within 23 years before the filing of the action, so that the mineral interests could not be considered abandoned under the dormant mineral statutes.

STANDARD OF REVIEW
The meaning of a statute is a question of law, which an appellate court resolves independently of the trial court.[4]

ANALYSIS
This case turns on the meaning of Nebraska's dormant mineral statutes. Generally, dormant mineral statutes were enacted to address title problems that developed after mineral estates were fractured.[5] At common law, mineral interests could not be abandoned.[6] But permanent or long-term mineral interests could be created during a period of activity in a particular industry, and those interests did not terminate when the activity ceased.[7] So, the mineral estate could be held by owners who had long disappeared from the area, leaving no trace.[8] When the record owner of severed mineral interests could not be contacted, the dormant interests could cloud the titles of surface owners, and further development of the mineral estates became nearly impossible.[9] Legislatures sought to remedy some of those problems by enacting statutes to reunite dormant mineral estates with surface estates.[10]
Nebraska's dormant mineral statutes are representative of those concerns.[11] Section 57-228 provides:

*435 Any owner or owners of the surface of real estate from which a mineral interest has been severed, on behalf of himself and any other owners of such interest in the surface, may sue in equity in the county where such real estate, or some part thereof, is located, praying for the termination and extinguishment of such severed mineral interest and cancellation of the same of record. . . .
The court shall enter judgment terminating the severed mineral interest and vesting title in the surface owner if the court "shall find that the severed mineral interest has been abandoned."[12] And § 57-229 explains in part:
A severed mineral interest shall be abandoned unless the record owner of such mineral interest has within the twenty-three years immediately prior to the filing of the action provided for in sections 57-228 to 57-231, exercised publicly the right of ownership by (1) acquiring, selling, leasing, pooling, utilizing, mortgaging, encumbering, or transferring such interest or any part thereof by an instrument which is properly recorded in the county where the land from which such interest was severed is located; or (2) drilling or mining for, removing, producing, or withdrawing minerals from under the lands or using the geological formations, or spaces or cavities below the surface of the lands for any purpose consistent with the rights conveyed or reserved in the deed or other instrument which creates the severed mineral interest; or (3) recording a verified claim of interest in the county where the lands from which such interest is severed are located.
There is no evidence in this case of any drilling or mining activity or of a recorded claim of interest. Instead, the question is whether the right of ownership claimed by the Vap heirs was publicly exercised pursuant to § 57-229(1). Specifically, the Vap heirs argue that they or their predecessors in interest exercised the right of ownership by "leasing" or "transferring" the mineral interests.
The Vap heirs rely on a Michigan case, Energetics v. Whitmill,[13] that arose under similar circumstances, and in which the Michigan Supreme Court held that the interests at issue were not abandoned. But we find Whitmill to be distinguishable, because of an important difference between the Nebraska and Michigan dormant mineral statutes.
In Whitmill, severed oil and gas interests had been leased for a 10-year period, but the lease expired, and several years later, the surface owners claimed title pursuant to the Michigan dormant mineral statute. Whether the 20-year dormancy period had run depended on whether the period began to run at the beginning or end of the lease term. The Michigan statute provided, in relevant part, that an oil or gas interest "`in any land owned by any person other than the owner of the surface, which has not been sold, leased, mortgaged or transferred . . . for a period of 20 years shall, in the absence of the issuance of a drilling permit . . . be deemed abandoned.'"[14]
The Michigan Supreme Court rejected the argument that the mineral interests had been "leased" during the lease term, explaining that if such a construction of the statute were adopted, "there would be nothing to prevent the owner of a severed *436 interest from executing a lease with a primary term much longer than twenty years. Thus, a severed interest might be sheltered from the operation of the act for an indefinite period."[15] And had the Michigan Legislature intended that result, it could have explicitly provided that the dormancy period would not run while the severed interest was subject to a lease.[16]
The court found, however, that when the lease expired, the oil and gas interest had been "`transferred'" within the meaning of the Michigan statute.[17] The court explained that the lease itself was a transfer of the oil and gas interest, so when the rights conferred by the lease reverted back to the lessor, the interest was "`transferred'" back.[18]
But the Michigan court's reasoning was grounded in the unique language of the Michigan statute, which, as set forth above, simply required that an oil or gas interest be "sold, leased, mortgaged or transferred" to avoid abandonment, without regard to who (if anyone) initiated the action.[19] Nebraska's statute, on the other hand, expressly requires "the record owner of such mineral interest" to "exercise[] publicly the right of ownership" by performing one of the actions specified in the statute during the statutory period.[20] In other words, the Whitmill court's reasoning regarding whether the mineral interest had been "transferred" is inapplicable under Nebraska's statute, and the court's reasoning regarding when the interest had been "leased" supports the district court's conclusion, in this case, that it had been leased by the record owner only when the lease was executed and properly recorded.
The record in this case is clear that the record owners of the disputed mineral interests last "leased" the interests within the meaning of the statute at the time the leases were executed and properly recorded, because that was when they publicly exercised their right of ownership. And even assuming, without deciding, that the expiration of the leases in this case resulted in a "transferring" of the disputed mineral interests, such a transfer was initiated either by the lessee or simply by operation of lawnot by the record owners.
To conclude otherwise would be contrary to both the language and purpose of the dormant mineral statutes. Statutory language is to be given its plain and ordinary meaning,[21] and our duty in discerning the meaning of a statute is to determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense.[22] It is consistent with the statutory purpose of preventing abandonment of mineral estates to require an absent owner of dormant mineral interests to actively exercise those interests. And the plain language of § 57-229 provides that a severed mineral interest is abandoned unless the record owner of the interest is the one who publicly exercises it.
In this case, that did not happen during the 23 years preceding Ricks' complaint. Had the Vap heirs wanted to preserve *437 their interests during that time, they could have recorded a verified claim of interest in Hitchcock County. Instead, they permitted the interests to remain dormant, which is precisely what the dormant mineral statutes are intended to address. Therefore, we find no merit to their assignment of error.

CONCLUSION
The last time Daniel, Joe, or the Vap heirs publicly exercised their right of ownership to the severed mineral interests disputed in this case was when they leased and properly recorded the interests to Gemini, more than 25 years before Ricks filed her complaint to terminate and extinguish those interests. The district court did not err in granting Ricks the relief she requested. The district court's judgment is affirmed.
AFFIRMED.
NOTES
[1] Neb.Rev.Stat. §§ 57-228 to 57-231 (Reissue 2004).
[2] § 57-229(1).
[3] § 57-228.
[4] See Bamford v. Bamford, Inc., 279 Neb. 259, 777 N.W.2d 573 (2010).
[5] See, generally, Timothy C. Dowd, Clearing Title of Long-Lost Mineral Owners, 54 Rocky Mtn. Min. L. Inst. 30-1 (2008); Ronald W. Polston, Mineral Ownership Theory: Doctrine in Disarray, 70 N.D. L.Rev. 541 (1994).
[6] See Dowd, supra note 5.
[7] See Ronald W. Polston, Legislation, Existing and Proposed, Concerning Marketability of Mineral Titles, 7 Land & Water L.Rev. 73 (1972).
[8] See id.
[9] See, Dowd, supra note 5; Polston, supra note 5; Polston, supra note 7.
[10] See Dowd, supra note 5.
[11] See, generally, Committee on Public Works Hearing, L.B. 158, 77th Leg., 1st Sess. 14 (Feb. 10, 1967); Floor Debate, 77th Leg., 1st Sess. 477-78 (Feb. 17, 1967).
[12] § 57-230.
[13] Energetics, Ltd. v. Whitmill, 442 Mich. 38, 497 N.W.2d 497 (1993).
[14] See, id. at 40 n. 2, 497 N.W.2d at 499 n. 2; Mich. Comp. Laws Ann. § 554.291 (West 2005).
[15] Whitmill, supranote 13, 442 Mich. at 46, 497 N.W.2d at 501.
[16] See id.
[17] Id. at 46, 497 N.W.2d at 502.
[18] Id.
[19] See Mich. Comp. Laws Ann. § 554.291.
[20] See § 57-229.
[21] Carter v. Carter, 276 Neb. 840, 758 N.W.2d 1 (2008).
[22] See Concrete Indus. v. Nebraska Dept. of Rev., 277 Neb. 897, 766 N.W.2d 103 (2009).