establish that he was the first aggressor. Consequently, its exclusion was harmless error. We reverse the decision of the Court of Appeals and remand the cause with direction that the relevant convictions and sentences be reinstated.

Reversed and remanded with direction.

———————

Larry L. Rice, appellant and cross-appellee, v. Joe K. Bixler and Bonnie L. Bixler Szidon, appellees and cross-appellants, and Donald M. McDowell et al., appellees.

___ N.W.2d ___

Filed October 3, 2014.    No. S-13-699.

1.  **Equity: Appeal and Error.** On appeal from an equity action, an appellate court tries factual questions de novo on the record and, as to questions of both fact and law, is obligated to reach a conclusion independent of the conclusion reached by the trial court.
2.  **Summary Judgment: Appeal and Error.** In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted, and gives that party the benefit of all reasonable inferences deducible from the evidence.
3.  **Statutes.** Statutory interpretation presents a question of law.
4.  **Mines and Minerals: Title.** In general, dormant mineral statutes were enacted to address title problems that developed after mineral estates were fractured.
5.  **Statutes: Intent: Appeal and Error.** In interpreting the requirements of a statute, an appellate court looks to the intent and purpose of the statute.
6.  **Statutes.** Statutory language is to be given its plain and ordinary meaning.
7.  **Statutes: Legislature: Intent: Appeal and Error.** An appellate court's duty in discerning the meaning of a statute is to determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense.
8.  **Statutes: Words and Phrases.** As a general rule, the word "shall" in a statute is considered mandatory and is inconsistent with the idea of discretion.
9.  **Statutes: Appeal and Error.** An appellate court must not read anything plain, direct, and unambiguous out of a statute.

Appeal from the District Court for Sioux County: Travis P. O'Gorman, Judge. Affirmed in part, and in part reversed and remanded with directions.

Daniel H. Skavdahl, of Skavdahl, Edmund & Stecher Law Offices, for appellant.

John F. Simmons, of Simmons Olsen Law Firm, P.C., for appellees.

Wright, Connolly, Stephan, McCormack, Miller-Lerman, and Cassel, JJ.

Wright, J.

## NATURE OF CASE

The surface owner of various tracts of land in Sioux County, Nebraska, sued the alleged owners of the severed mineral interests in those tracts under Nebraska's "dormant mineral statutes," Neb. Rev. Stat. §§ 57-228 to 57-231 (Reissue 2010).

All of the alleged mineral owners involved in this appeal filed verified claims to the mineral interests prior to the action commenced by the surface owner. Both sides moved for summary judgment. The district court determined that the alleged mineral owners had either strictly complied or substantially complied with the requirements of § 57-229 to exercise publicly the right of ownership of the severed mineral interests. It concluded the alleged mineral owners had not forfeited their mineral interests, except for one of the claims. It found that such claim failed to reference the source of the deed or other instrument under which the mineral interests were claimed. The surface owner appeals, and two of the alleged mineral owners cross-appeal as to the mineral interests that were terminated.

## SCOPE OF REVIEW

[1] On appeal from an equity action, an appellate court tries factual questions de novo on the record and, as to questions of both fact and law, is obligated to reach a conclusion independent of the conclusion reached by the trial court. *Gibbs Cattle Co. v. Bixler*, 285 Neb. 952, 831 N.W.2d 696 (2013).

[2] In reviewing a summary judgment, an appellant court views the evidence in the light most favorable to the party

against whom the judgment was granted, and gives that party the benefit of all reasonable inferences deducible from the evidence. *Green v. Box Butte General Hosp*., 284 Neb. 243, 818 N.W.2d 589 (2012).

[3] Statutory interpretation presents a question of law. *Molczyk v. Molczyk*, 285 Neb. 96, 825 N.W.2d 435 (2013).

## FACTS

Larry L. Rice is the surface owner of the land in question. He claims that the alleged owners of the severed mineral interests named herein have abandoned their interests, because they did not comply with the requirements of § 57-229. Prior to the time this action was commenced, Joe K. Bixler; Bonnie L. Bixler Szidon; Charles Albert Cunningham, Jr.; Richard Bixler Cunningham; John H. McDowell; and Donald M. McDowell (defendants) filed verified claims to the severed mineral interests of the real estate owned by Rice.

Some, but not all, of the mineral interests in question were owned by Delia Bixler during her lifetime. She died intestate, and her heirs at law were John Bixler and Charles Bixler, her sons; LaVerna Reardon and Joan Cunningham, her daughters; and John McDowell and Donald McDowell, her grandsons. A final decree entered in the county court for Sioux County transferred all of her mineral interests to her heirs.

Joe Bixler and Bonnie Bixler Szidon received their mineral interests from Charles Bixler and his wife by two recorded deeds. Joe Bixler and Bonnie Bixler Szidon filed two verified claims on January 26, 2011, one for a small interest and one for a large interest. The smaller of the two claims was filed in the office of the Sioux County clerk/register of deeds in "Book A-61 of Miscell[aneous,] Page 635." The larger claim was filed in "Book A-61 of Miscell[aneous,] Page 634." Both verified claims describe the land and the nature of the interest claimed, provide the claimants' names and addresses, and state that they claimed the interest and do not intend to abandon it.

The smaller interest of Joe Bixler and Bonnie Bixler Szidon's claim includes a statement that the "interest is based on a Mineral Deed issued 13 August 1981 (BOOK A-15 Page

66).” The larger interest does not include this language and does not cite to any document that identifies the deed or other instrument under which the interest was claimed.

Charles Cunningham and Richard Cunningham are the heirs of the estate of Joan Cunningham, whose will was admitted to probate July 29, 1993, in Mobile County, Alabama.

Richard Cunningham filed a verified claim in the office of the Sioux County clerk/register of deeds on January 31, 2011, in “Book A-61 of Miscell[aneous,] Page 648.” The claim states that it is intended to be a “verified claim of severed interests . . . of an undivided 10%(ten) percent interest in all oil, gas and other minerals that may be produced from” the described land. It states the name and address of the person claiming the interest and states that the claimant “makes continued claim to this interest and has no intention of abandoning the interests.”

Charles Cunningham filed two verified claims. The first claim was filed January 24, 2011, in “Book A-61 of Miscell[aneous,] Page 633.” The second claim was filed February 7, 2011, in “Book A-61 of Miscell[aneous,] Page 657.” Both claims included statements similar in substance to those contained in the claim filed by Richard Cunningham.

The Cunninghams’ verified claims provide no reference to a deed or other conveyance recorded in Sioux County under which their interest was claimed. Instead, they include documents that trace their interest from their mother, Joan Cunningham, through her will probated in Mobile County, Alabama. These statements were offered and received at the hearing on the motions for summary judgment.

As stated above, John McDowell and Donald McDowell received their mineral interest from the estate of Delia Bixler. John McDowell and Donald McDowell filed verified claims in the office of the Sioux County clerk/register of deeds on January 21 and February 14, 2011. The claims of the McDowells were filed in “Book A-61 of Miscell[aneous,] Page 632,” and in “Book A-62 of Miscell[aneous,] Page 1.” They both identify the document as a “verified claim of several [sic] interests . . . of an undivided 1/10 [interest in] mineral rights to all oil, gas and other minerals that may be produced

from" the described land. They state the name and address of the person claiming the interest and state that the claimant "intends to claim this interest and has no intention of abandoning the claim."

The claims of the McDowells state that the interest was conveyed from the estate of Delia Bixler and is based on a "Joint Tenancy Mineral Deed" that was issued on December 17, 1958. The record does not contain a "Joint Tenancy Mineral Deed" of record in Sioux County.

All parties moved for summary judgment. At the hearing on the motions, Rice offered no evidence. The defendants offered the verified claims described above. They also offered the mineral deeds from Charles Bixler and his wife to Joe Bixler and Bonnie Bixler Szidon recorded in "Book A-14 of Deeds[,] Page 537-538," and "Book A-15 of Deeds[,] Page 66," in Sioux County, and the "Last Will and Testament" and "Letters Testamentary" of the estate of Joan Cunningham.

The district court determined that all the defendants had filed verified claims but that some of the claims filed did not strictly comply with the statutes. The court concluded that the doctrine of substantial compliance could be applied to those claims that did not strictly comply with the requirements of § 57-229(3). Relying on *Gibbs Cattle Co. v. Bixler*, 285 Neb. 952, 831 N.W.2d 696 (2013), the court determined that all provisions of the dormant mineral statutes should be construed in favor of the mineral owner. It also concluded that our decision in *Gibbs Cattle Co.* mandated that substantial compliance with the statutes was sufficient.

The district court then analyzed the verified claims filed by the parties. The court determined that the claims of Charles Cunningham and Richard Cunningham, the claims of John McDowell and Donald McDowell, and the smaller claim of Joe Bixler and Bonnie Bixler Szidon all substantially complied with the statutes, and it dismissed the action against those parties. However, the court determined that Joe Bixler and Bonnie Bixler Szidon's larger claim, filed in "Book A-61 of Miscell[aneous,] Page 634," failed to protect their mineral interest because it did not reference the deed or other instrument under which the interest was claimed. The court granted

summary judgment in favor of Rice as to the larger claim and terminated and extinguished the mineral interests of Joe Bixler and Bonnie Bixler Szidon in the larger claim.

Rice appealed the decision of the district court overruling his motions for summary judgment and dismissing his actions as above described. Joe Bixler and Bonnie Bixler Szidon cross-appealed the summary judgment against them as to the larger of their verified claims. The defendants filed a petition to bypass, which we granted.

## ASSIGNMENTS OF ERROR

On appeal, Rice assigns that the district court erred in failing to terminate the mineral interests of the Cunninghams and the McDowells.

On cross-appeal, Joe Bixler and Bonnie Bixler Szidon assign that the district court erred in granting Rice's motion for summary judgment terminating their mineral interests in the larger claim and in failing to grant their motion for summary judgment.

## ANALYSIS

The issue is whether the purported owners of the severed mineral interests have complied with the provisions of Nebraska's dormant mineral statutes. The defendants do not claim that the statutory requirements were permissive, but, rather, assert that they substantially complied with these requirements. The ultimate question is whether strict compliance with § 57-229 is required or whether substantial compliance is sufficient.

Section 57-229 provides:

> A severed mineral interest shall be abandoned unless the record owner of such mineral interest has within the twenty-three years immediately prior to the filing of the action provided for in sections 57-228 to 57-231, exercised publicly the right of ownership by . . . (3) recording a verified claim of interest in the county where the lands from which such interest is severed are located. Such a claim of interest shall describe the land and the nature of the interest claimed, shall properly identify the deed

or other instrument under which the interest is claimed, shall give the name and address of the person or persons claiming the interest, and shall state that such person or persons claim the interest and do not intend to abandon the same.

We have addressed the dormant mineral statutes in recent years. See, *WTJ Skavdahl Land v. Elliott*, 285 Neb. 971, 830 N.W.2d 488 (2013); *Gibbs Cattle Co. v. Bixler*, 285 Neb. 952, 831 N.W.2d 696 (2013); *Peterson v. Sanders*, 282 Neb. 711, 806 N.W.2d 566 (2011); *Ricks v. Vap*, 280 Neb. 130, 784 N.W.2d 432 (2010). However, those cases all addressed issues outside the scope of a verified claim. The issues in those cases concerned the status of the severed mineral interest in the absence of a verified claim. We have not addressed a situation in which the severed mineral interest owner filed a verified claim and the surface owner contended that the verified claim was not sufficient to protect the severed mineral interest.

The defendants argue, and the district court agreed, that given our precedent in regard to the dormant mineral statutes, substantial compliance with the statutes was sufficient to protect the interest of the severed mineral owner. The surface owner, Rice, argues that strict compliance with the dormant mineral statutes is required in order to protect the severed rights or the owner risks forfeiture of those rights.

[4] In general, dormant mineral statutes were enacted to address title problems that developed after mineral estates were fractured. *Ricks v. Vap, supra*. At common law, mineral interests could not be abandoned. *Id.* Permanent or long-term mineral interests could be created during a period of activity in a particular industry, and those interests did not terminate when the activity ceased. *Id.* As a result, the mineral estate could be held by owners who had long since disappeared from the area, leaving no trace. *Id.* When the record owner of severed mineral interests could not be contacted, the dormant interests could cloud the titles of surface owners and hinder further development of the mineral estates. *Id.* The Legislature sought to remedy some of those problems by enacting statutes to reunite dormant mineral estates with surface owners. *Id.*

Any surface owner of the real estate from which a mineral interest has been severed may sue in equity in the county where the real estate or some part thereof is located to terminate and extinguish the severed mineral interest if the court shall find that the severed mineral interest has been abandoned. See *id*. On appeal from an equity action, an appellate court tries factual questions de novo on the record and, as to questions of both fact and law, is obligated to reach a conclusion independent of the conclusion reached by the trial court. *Gibbs Cattle Co. v. Bixler, supra*.

In the case at bar, the district court relied upon *Gibbs Cattle Co.* to reach its conclusion that substantial compliance with the requirements of § 57-229 was sufficient. In *Gibbs Cattle Co.*, the issue was whether the "record owner" of mineral interests included a person identified by the probate records in the county where the interests were located. We concluded that it did. We reasoned that equity abhors forfeitures and that because the case sounded in equity, "if any doubt remains as to the meaning of 'record owner,' it should be construed against forfeiture." *Id*. at 962, 831 N.W.2d at 703. Since § 57-229 did not define "record owner," the question was whether the person described in the records of the probate in Sioux County was a record owner. But *Gibbs Cattle Co.* did not address the requirements of § 57-229(3) for recording a verified claim.

The requirements for filing a verified claim to exercise publicly the interest are not in doubt. If the severed mineral owner elects to exercise publicly his or her interest by filing a verified claim, such owner must meet the statutory requirements. The requirements are not difficult, and § 57-229 gives the severed mineral owner ample time in which to comply with such requirements. For the reasons set forth, we hold that severed mineral owners must strictly comply with the statutory requirements of § 57-229 and that the district court erred in concluding that substantial compliance was sufficient.

[5-7] Statutory interpretation presents a question of law, *Molczyk v. Molczyk*, 285 Neb. 96, 825 N.W.2d 435 (2013), and our de novo review is guided by these legal principles. In interpreting the requirements of a statute, we look to the

intent and purpose of the statute. See *Harvey v. Nebraska Life & Health Ins. Guar. Assn.*, 277 Neb. 757, 765 N.W.2d 206 (2009). Statutory language is to be given its plain and ordinary meaning. *Ricks v. Vap*, 280 Neb. 130, 784 N.W.2d 432 (2010). Our duty in discerning the meaning of a statute is to determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense. *Id*.

So what must the owners of severed mineral interests do to exercise publicly their rights of ownership? Our answer to this question is based upon the purpose of § 57-229.

As stated above, the purpose of the dormant mineral statutes was to address title problems that developed after mineral estates were fractured. *Gibbs Cattle Co. v. Bixler*, 285 Neb. 952, 831 N.W.2d 696 (2013); *Peterson v. Sanders*, 282 Neb. 711, 806 N.W.2d 566 (2011). The text of the dormant mineral statutes also demonstrates that the Legislature balanced this purpose with protecting the owners' property rights. The dormant mineral statutes have a dual purpose: to clear title records and protect identifiable rights. *Gibbs Cattle Co. v. Bixler, supra*.

Each of the alleged mineral owners presents different arguments as to how he or she exercised publicly his or her ownership of the mineral interests in question. Each of these alleged mineral owners argues that there is no material issue of fact, and the owners assert that they have substantially complied with the requirements of the dormant mineral statutes and that substantial compliance is all the statute requires. Exercising publicly the right of ownership by recording a verified claim of interest has several requirements. See § 57-229. We examine each of these requirements.

The person recording the verified claim must be the record owner. In *Gibbs Cattle Co.*, the surface owner asked us to limit the definition of "record owner" to the fee owner of real property as shown in the records of the register of deeds office in the county in which the business area is located. See Neb. Rev. Stat. § 19-4017.01 (Reissue 2012). We declined that limitation. Because the term was not defined in the statutes, we referred to Black's Law Dictionary, which defined a record

owner as "'[a] property owner in whose name the title appears in the public records.'" *Gibbs Cattle Co*., 285 Neb. at 959, 831 N.W.2d at 701. We held that the record owner of mineral interests, as used in § 57-229, may be determined not only from the register of deeds but also from the probate records in the county where the interests are located. We reasoned that including an owner identified through probate records in the county where the interests were located was consistent with the dormant mineral statutes' purpose of clearing title records and also protected the identifiable property rights. Because this was an action in equity, we concluded that any doubt as to the meaning of the term "record owner" should be construed against forfeiture.

But any construction of the term "record owner" to include an owner whose interests were not recorded in the county where the interests were located would not serve the purpose of clearing title to dormant mineral interests in real estate located in such county. And it is consistent with the statutory purpose of preventing abandonment of mineral estates to require an absent owner of dormant interests to actively exercise those interests. *Ricks v. Vap*, 280 Neb. 130, 784 N.W.2d 432 (2010). Section 57-229 expressly requires the record owner of such minerals to exercise publicly the right of ownership by one of the methods specified in the statute during the statutory period. *Ricks v. Vap, supra*.

There are different methods by which a record owner may exercise publicly the right of ownership. See § 57-229. If the record owner elects to proceed under § 57-229(3) by filing a verified claim, the record owner must follow certain requirements. In interpreting these requirements, we determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense. *Ricks v. Vap, supra*.

[8] In the case at bar, the plain and ordinary meaning of the term "shall" is mandatory. The term "shall" appears several times in § 57-229 in describing what actions must be done to exercise publicly the right of ownership. As a general rule, the word "shall" in a statute is considered mandatory and is inconsistent with the idea of discretion. *McDougle v. State*

*ex rel*. *Bruning, ante* p. 19, ___ N.W.2d ___ (2014); *Burns v. Nielsen*, 273 Neb. 724, 732 N.W.2d 640 (2007). If the stated requirements for the filing of a verified claim were not mandatory, the statute would serve no purpose and there would be no clear statement of what the mineral owner must do. "Shall" means that the record owner must comply with the requirements set forth in § 57-229(3).

Strict compliance is mandatory and must be met prior to the date the action is filed by the surface owner. The severed mineral owners cannot assert their claims by recording documents after the surface owner's action has commenced. A lesser standard would serve only to further cloud the title to the severed mineral interests.

We point out that the burden imposed by § 57-229 upon the severed mineral owners is not great. And only two requirements provide for some diligence and effort by the mineral owner. The owner must describe the land and the interest claimed, as well as properly identify the deed or other instrument under which the interest is claimed. Strict compliance with such requirements is the responsibility of the owner, and it is not an onerous burden.

With that said, we address the requirements of § 57-229(3) as they relate to the claims filed by the defendants.

### Charles Cunningham and Richard Cunningham

Charles Cunningham and Richard Cunningham filed their verified claims in the office of the Sioux County clerk/register of deeds as above described. But the Cunninghams have not established they are record owners of the interests described in their verified claims. The record owner of the interests described in their claims was Joan Cunningham, as shown by the final decree in the matter of the estate of Delia Bixler recorded in "BOOK A-1" in the office of the Sioux County clerk/register of deeds, at pages 297-301.

There is no evidence that the Cunninghams have filed anything in the records of Sioux County that would prove they are the record owners of the mineral interests located in Sioux County. They claim through the last will and testament

of their mother, Joan Cunningham. But the record before us presents nothing in the public records of Sioux County that establishes that her interests were transferred to them.

It is true that after the case at bar was commenced, the Cunninghams offered certified copies of their mother's will and letters testamentary filed in Mobile County, Alabama. The Cunninghams were required to establish themselves as the record owners before the action was commenced. The plain language of § 57-229 provides that the record owner of such mineral interest has 23 years immediately prior to the filing of the actions provided for in the dormant mineral statutes to exercise publicly the right of ownership. The record does not reflect that the Alabama probate documents through which the Cunninghams claim mineral interests were ever recorded in the office of the Sioux County clerk/register of deeds or filed in the probate records of that county before Rice commenced this action.

The Cunninghams have not established within the time required by § 57-229 that they are the record owners of the mineral interests in question. Therefore, they have abandoned such interests. The order of the district court is reversed with directions to enter judgment that the Cunninghams have abandoned their claimed mineral interests described in their verified claims, and their interests are terminated.

### John McDowell and Donald McDowell

John McDowell and Donald McDowell filed the verified claims described above on January 21 and February 14, 2011. The McDowells were record owners of the minerals as heirs named in the final decree of the estate of Delia Bixler. But the McDowells did not properly identify the deed or other interest under which their interest was claimed. Both claims referred to a "Joint Tenancy Mineral Deed" dated December 17, 1958, but they do not reference a book and page where the deed is recorded in the public records of Sioux County.

Section 57-229(3) provides that the record owner "shall properly identify the deed or other instrument under which the interest is claimed." The McDowells did not properly

identify the instrument under which their interest was claimed. Reference to an unrecorded deed that may or may not exist does not establish the proper chain of ownership necessary to comply with the requirements for filing a verified claim. Without proper identification of the deed or other instrument under which the interest is claimed, there has been no compliance with § 57-229.

[9] An appellate court must not read anything plain, direct, and unambiguous out of a statute. *Herrington v. P.R. Ventures*, 279 Neb. 754, 781 N.W.2d 196 (2010). The McDowells did not properly identify the deed or other interest under which their interest was claimed within the time required by § 57-229. Therefore, they have abandoned such interests; the order of the district court is reversed with directions to enter judgment that the McDowells have abandoned said mineral interests; and their interests are terminated.

### Joe Bixler and Bonnie Bixler Szidon

Joe Bixler and Bonnie Bixler Szidon filed two verified claims that described different parcels of real estate located in Sioux County in which they claimed their mineral interests. As to the smaller interest, filed in Sioux County on January 26, 2011, in "Book A-61 of Miscell[aneous,] Page 635," the district court found there was no dispute that Joe Bixler and Bonnie Bixler Szidon met the requirements of § 57-229. It granted summary judgment in their favor and dismissed the complaint. Rice has not appealed from that judgment.

The district court found that the claim filed on January 26, 2011, by Joe Bixler and Bonnie Bixler Szidon in "Book A-61 of Miscell[aneous,] Page 634," and referred to as the "larger" claim, did not meet the requirements of § 57-229, because it did not purport to identify the deed or other instrument under which this interest was claimed. The court entered judgment in favor of Rice and against Joe Bixler and Bonnie Bixler Szidon, terminating and extinguishing the severed mineral interests above described and vesting those interests in Rice. We agree.

As previously stated, if the land subject to the dormant mineral statutes is not described correctly or the verified claim does not properly identify the deed or other instrument under which the interest is claimed, such failure does not meet either statutory purpose of clearing title records or protecting identifiable property rights. The burden is upon the record owner to properly identify such instrument.

Because Joe Bixler and Bonnie Bixler Szidon failed to describe the deed or other instrument under which the larger mineral interest was claimed, they did not comply with the statutory requirements. We therefore affirm that portion of the judgment of the district court which terminated the mineral interests of Joe Bixler and Bonnie Bixler Szidon described in the verified claim filed in Sioux County in "Book A-61 of Miscell[aneous,] Page 634."

## CONCLUSION

For the reasons set forth herein, we affirm that portion of the district court's judgment described above and we reverse that portion of the judgment of the district court which sustained the motions for summary judgment in favor of Charles Cunningham and Richard Cunningham and John McDowell and Donald McDowell. We remand the cause with directions to enter judgment in favor of Rice that the Cunninghams and the McDowells have abandoned their interests in the minerals described in their claims, and such interests are terminated. For the reasons described above, the cross-appeal of Joe Bixler and Bonnie Bixler Szidon is dismissed.

Affirmed in part, and in part reversed
and remanded with directions.

Heavican, C.J., not participating.